UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| RAINA L. LOEFER., <br> Plaintiff, <br><br> vs. <br><br> KIMBERLY CRAVEN, ATTORNEY GENERAL OF CRST, IN HER OFFICIAL CAPACITY; RYMAN LEBEAU, CHAIRMAN OF CRST, IN HIS OFFICIAL CAPACITY; AND JUDGE BRENDA CLAYMORE, CHIEF JUDGE CRST, IN HER OFFICIAL CAPACITY, <br> Defendants. | 3:26-CV-03023-RAL <br><br> PRELIMINARY REVIEW ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |

Raina L. Loefer ("Loefer") petitions, pro se, for a writ of habeas corpus under 25 U.S.C. § 1303 and 28 U.S.C. § 2241.[1] She also seeks declaratory and injunctive relief against Cheyenne River Sioux Tribe (CRST) officials challenging the constitutionality of an order excluding her from the reservation.[2] And she also moves for "immediate discovery and the issuance of a subpoena *duces tecum*."[3] Because it is does not "plainly appear from the petition" that Loefer is "not entitled to relief," the Court directs the appropriate defendants ("respondents") to file "an answer, motion, or other response[.]"[4] Discovery though, at this stage, is untimely until after such a response.

[1] Dkt. No. 1
[2] Dkt. No. 1, at 7.
[3] Dkt. No. 8.
[4] Rules Governing § 2254 Cases, Rule 4.

## BACKGROUND

On February 6, 2026, Loefer and another individual allegedly entered CRST land and a tribal school under false pretenses to gain access to a minor child.[5] While Loefer is a member of the Rosebud Sioux Tribe, she is not a member of the CRST.[6] On March 4, 2026, the CRST tribal council referred the matter to Kimberly Craven ("Craven"), CRST's Attorney General, who petitioned with the CRST tribal court to issue an emergency exclusion order on April 3, 2026.[7]

Brenda Claymore ("Claymore"), the chief CRST judge, then entered an emergency banishment order four days later.[8] The order excluded Loefer from the CRST reservation because of "an exigent circumstance" until "a hearing [could] be held . . . within two (2) weeks . . . or at such other date the [c]ourt shall order[.]"[9] The order informed her that she could "immediately petition the [t]ribal [c]ourt for a hearing to reconsider the [o]rder" at which "she [could] be represented by counsel" and "present evidence in her own defense[.]"[10] Despite the order's edict that her banishment only lasts until she receives a full hearing on the issue, Loefer protests that she is "subject to a permanent/long term sovereign exclusion/banishment order" in violation of her rights.[11] She claims that "an

---

[5] Dkt. No.1-1, at 15.
[6] *See* Dkt. No. 1-1, at 15.
[7] Dkt. No. 1-1, at 11, 14-16.
[8] Dkt. No. 1-1, at 27-28.
[9] Dkt. No. 1-1, at 28.
[10] Dkt. No. 1-1, at 28.
[11] Dkt. No. 1, at 1.

appellate process was unavailable because the exclusion was executed summarily by the [t]ribal [c]ouncil without an underlying trial[.]"[12] To Loefer, "any attempt to file an appeal remains futile because of nonfeasance on the part of the tribal clerk and Claymore.[13]

## DISCUSSION

Four threshold questions must be answered before considering the merits of the petition: (1) what is the applicable standard of review for Loefer's habeas petition; (2) is she "detained"; (3) who are the proper respondents; and (4) has she exhausted her tribal remedies.

### A. Applicable Habeas Review.

Loefer has filed her petition using the form for § 2241 cases and the clerk has docketed the case under that same statute.[14] But in her petition, Loefer says she is "challenging the absolute restriction on [her] liberty under [] § 1303."[15] Only § 1303 permits her to challenge the legality of a tribal detention.[16] Section 1303 contains the exclusive remedy for violations of the Indian Civil Rights Act ("ICRA"): a writ of habeas corpus in federal court.[17] Loefer alleges violations of her rights to due process and equal protection under the ICRA.[18]

---

[12] Dkt. No. 1, at 3.
[13] Dkt. No. 1, at 7.
[14] Dkt. Nos. 1; 2.
[15] Dkt. No. 1, at 3.
[16] *See Springer v. Sherman*, No. 23-CV-00015, 2023 WL 8358394, at *2 (D. Neb. Dec. 1, 2023) (comparing §§ 2241 and 1303); *Rousseau v. Cheyenne River Sioux Tribe*, No. 24-CV-00249, 2025 WL 607328, at *2 n.2 (D.N.D. Feb. 10, 2025).
[17] *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 66-72 (1978).
[18] *See* Dkt. No. 1, at 6 (invoking Loefer's rights under ICRA § 1302(a)).

ICRA petitions are governed by the rules applicable in other habeas cases.[19] These rules require a judge to review the petition preliminarily; if it "plainly appears from the petition and any attach[ments] that the petitioner is not entitled to relief," then the judge "must dismiss the petition."[20] Otherwise, the judge "must order the respondent to file an answer, motion, or other response…or [] to take other action[.]"[21]

Loefer seems to understand that only § 1303 can provide her relief.[22] Although filed as a § 2241 case,[23] Loefer's petition really seeks § 1303 relief.[24] A meaningful distinction, this point must be clarified, given the incorrect docketing.[25]

That said, Loefer's petition does not provide enough information for the Court to determine whether it has subject matter jurisdiction and whether she has exhausted tribal remedies. So a response is necessary before the Court can take further action.

**B. Respondents.**

Generally, a habeas petition only has one respondent: the person "who has the immediate custody of the party detained, with the power to produce the body"[26] or

---

[19] *See* Rules Governing § 2254 Cases, Rule 1(b) (extending scope of § 2254 rules to other petitions); *Rousseau v. Cheyenne River Sioux Tribe*, No. 25-CV-03028, 2026 WL 207280 (D.S.D. Jan. 27, 2026) (affirming order applying § 2254 rules to § 1303 habeas); *Loonsfoot v. Brogan*, No. 21-CV-0089, 2021 WL 1940400, at *1 (W.D. Mich. May 14, 2021).
[20] Rules Governing § 2254 Cases, Rule 4.
[21] *Id.*
[22] Dkt. No. 1, at 3.
[23] *See* Dkt. No. 1.
[24] *See* Dkt. Nos. 1, at 3, 6, 7; 1-1, at 1-2 (citing 25 U.S.C. §§ 1302, 1303).
[25] Dkt. No. 1 (reflecting petition filed "pursuant to 28:2241").
[26] *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004) (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)).

otherwise "give the petitioner . . . [her] unconditional freedom."[27] For a petitioner who is not physically confined, the proper respondent is "the entity or person who exercises legal control with respect to the challenged 'custody'" over the petitioner.[28]

Loefer has named four respondents,[29] but it appears that only three are proper: (1) Craven, the tribe's Attorney General; (2) its chief judge, Claymore, who issued the temporary banishment order; and (3) Ryman LeBeau ("LeBeau"), the tribal chairman, or other such representatives of the tribal council.

Julian Arron ("Arron"), CRST's chief of police, is not able to provide Loefer the liberty she asks for. While charged with "exclud[ing] and/or remov[ing]" Loefer "from the reservation immediately,"[30] Arron does not have the power to overturn a lawful court order. The claims against Arron warrant dismissal, dealt with separate in a contemporaneously-filed report and recommendation. The other named respondents, however, seemingly have the collective authority to extinguish Loefer's banishment.

LeBeau and the CRST council voted to give Craven the authority to pursue exclusion of Loefer from the reservation.[31] Craven did so and obtained an emergency exclusion order from Claymore.[32] Together, it appears that one or more of these parties has the power to exercise legal control over Loefer and her banishment. They need not

---

[27] *Nygaard v. Taylor*, 563 F. Supp. 3d 992, 1018 (D.S.D. 2021).
[28] *Rumsfeld*, 542 U.S. at 438.
[29] Dkt. No. 1, at 1.
[30] Dkt. No. 1-1, at 27-28.
[31] Dkt. No. 1-1, at 11.
[32] Dkt. No. 1-1, at 14-16, 27-28.

have physical custody over her.[33] The "important thing" is that those who have "both an interest in opposing the petition if it lacks merit, and the power to give [Loefer] what [she] seeks if the petition has merit" are the parties to respond.[34] At this juncture, Craven, Claymore, and LeBeau should continue as parties and respond to the petition.

**C. Detention.**

Traditional habeas relief is provided to persons wrongfully "in custody."[35] The ICRA framework, however, employs a facially-distinct standard—the petitioner must be *detained*.[36] The extent to which this variation changes the substantive requirements is unsettled in the Eighth Circuit. The "in custody" requirement under other statutory frameworks includes situations beyond physical detention.[37] Other circuits are split, however, on whether "detention" and "custody" have distinct meanings.[38] The District

---

[33] *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 899 (2d Cir. 1996) ("As the 'custody' requirement has expanded to encompass more than actual physical custody, so too has the concept of a custodian as a respondent in a habeas case.").

[34] *Id.*

[35] *See* 28 U.S.C. §§ 2241, 2254, 2255.

[36] 25 U.S.C. § 1303 (emphasis added).

[37] *Maleng v. Cook*, 490 U.S. 488, 491 (1989) (per curiam); *see also Hensley v. Mun. Ct.*, 411 U.S. 345, 351 (1973).

[38] *Compare Poodry*, 85 F.3d at 891 ("custody" and "detention" are interchangeable in the context of ICRA habeas provisions), *Valenzuela v. Silversmith*, 699 F.3d 1199, 1203 (10th Cir. 2012) (recognizing circuit precedent treats "detention" under the ICRA and "custody" alike), *Kelsey v. Pope*, 809 F.3d 849, 854 (6th Cir. 2016) (proceeding to habeas merits after ruling petitioner was in custody), *and Tavares v. Whitehouse*, 851 F.3d 863, 884 (9th Cir. 2017) (Wardlaw, J., concurring in part) (opining "detention" and "custody" should be read interchangeably), *with Tavares*, 851 F.3d at 871 (interpreting "detention" as a more restrictive subset of "custody" that requires physical confinement) *and I.M. v. U.S. Customs & Border Patrol*, 67 F.4th 436, 443 n.9 (D.C. Cir. 2023) (agreeing with Judge Wardlaw's proposition that "detention" presupposes "custody" and means something narrower).

of South Dakota has treated the two terms synonymously,[39] aligning itself with other districts in the Eight Circuit.[40] The Court will do the same.

Section 1303 allows a person to "test the legality of [her] detention by order of an Indian tribe."[41] Lack of detention is a jurisdictional bar to review.[42] Detention or custody require that "conditions and restrictions . . . significantly restrain [a] petitioner's liberty[.]"[43] This standard encompasses "severe actual or potential restraint on liberty[.]"[44] A permanent banishment is tantamount to detention[45] but the potential threat of future confinement is insufficient to confer subject matter jurisdiction.[46]

Loefer insists that she has been "subject to a permanent/long term . . . banishment order."[47] Yet the order she includes only banishes her from the CRST reservation until the holding of a hearing within two weeks of her receipt of the exclusion petition or another

---

39 *See Rousseau*, 2026 WL 207280, at *3 (overruling objections to an order finding "custody" and "detention" synonymous); *Nygaard*, 563 F. Supp. 3d at 1012; *Stymiest v. Rosebud Sioux Tribe*, No. 14-cv-03001, 2014 WL 1165925, at *2–3 (D.S.D. Mar. 21, 2014).

40 *See e.g.*, *Spears v. Red Lake Band of Chippewa Indians*, 363 F. Supp. 2d 1176 (D. Minn. 2005) (understanding ICRA habeas relief to be available to petitioners "in custody"); *Payer v. Turtle Mountain Tribal Council*, No. 03-00105, 2003 WL 22339181, at *4 (D.N.D. Oct. 1, 2003) (construing "custody" and "detention" coextensively).

41 28 U.S.C. § 1303.

42 *Rousseau*, 2026 WL 207280, at *3 (citing Walton v. Tesuque Pueblo, 443 F.3d 1274, 1279 (10th Cir. 2006) ("A person must be detained for federal courts to have jurisdiction").

43 *Jones v. Cunningham*, 371 U.S. 236, 243 (1963).

44 *Poodry*, 85 F.3d at 880; *see also Jeffredo v. Macarro*, 599 F.3d 913, 919 (9th Cir. 2010) (holding that "§ 1303 does require 'a severe actual or potential restraint on liberty'"); *Nygaard*, 563 F. Supp. 3d at 1012 (in determining whether the jurisdictional prerequisites for habeas review have been satisfied, a court must consider the severity of the alleged restraint) (citing *Poodry*, 85 F.3d at 894).

45 *See Poodry*, 85 F.3d at 880.

46 *Jeffredo*, 599 F.3d at 919; *Edmunds v. Won Bae Chang*, 509 F.2d 39, 40–41 (9th Cir. 1975).

47 Dkt. No. 1, at 1.

date to be set.[48] The Court cannot determine whether her seemingly-temporary banishment remains in force. If she were under a permanent banishment order, then the Tribe has "detained" her for § 1303 purposes; if that order only places her under the potential threat of future permanent banishment, then the Court lacks jurisdiction to hear her claims. Respondents' answer should address the issue.

**D. Tribal Exhaustion.**

While detention is a question of subject matter jurisdiction, "principles of comity and the federal policy of promoting tribal self-government generally require that the [complaining party] fully exhaust tribal remedies before proceeding in federal court."[49] Exhaustion of tribal remedies "means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts."[50]

Unlike jurisdiction, federal courts may excuse exhaustion "when appellate review is extremely delayed, or the tribe lacks a functioning court system."[51] "That is not the

---

[48] Dkt. No. 1-1.

[49] *Chegup v. Ute Indian Tribe of the Uintah & Ouray Rsrv.*, 28 F.4th 1051, 1060 (10th Cir. 2022) (quoting Restatement of the Law of Am. Indians § 59 cmt. a (Am. Law Inst., Proposed Final Draft 2021)); *see also O'Neal v. Cheyenne River Sioux Tribe*, 482 F.2d 1140, 1141–42, 1148 (8th Cir. 1973) (individual Indian plaintiffs, who failed to exhaust tribal remedies in a civil action against CRST, were prohibited from bringing suit in federal court under ICRA); *Rousseau*, 2026 WL 207280, at *3 ("Section 1303 petitioners typically must exhaust their remedies in tribal court before coming to federal court.").

[50] *WPX Energy Williston, LLC v. Jones*, 72 F.4th 834, 837 (8th Cir. 2023) (quoting *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 17 (1987)).

[51] *Rousseau*, 2026 WL 207280, at *3 (citing *Krempel v. Prairie Indian Cmty.*, 125 F.3d 621, 622 (8th Cir. 1997)).

situation here, however."[52] The CRST "obviously has a functioning appellate court," which the Court knows to be true based on a recent case it handled.[53]

Loefer claims that any appellate process was "unavailable" because of the "summar[y]" nature of the banishment proceedings.[54] She alleges that "no internal appellate remedies were ever legally available" and other attempts remain "futile."[55] She adds that a CRST clerk "hid [her] paperwork" and Claymore "ignored [her] complaints, blocking all access to an independent tribunal."[56] Loefer says she tried to file "complaints" in emails to Claymore; but, unsuccessful in her attempts, she concludes that there are no tribal remedies available.

The order Loefer attaches to her petition appears to provide two different tribal court remedies available to her. First, the order states that her emergency banishment only lasts "until a hearing can be held[.]"[57] Second, the order affords her the opportunity to "immediately petition the [t]ribal [c]ourt for a hearing to reconsider" the emergency order itself.[58] Loefer has presented nothing that shows she exercised either of these two options. The Court also does not know whether the CRST court system would allow her the ability to collaterally attack the exclusion order by some other means or whether any

---

[52] *Id.*
[53] *Id.*
[54] Dkt. No. 1, at 3.
[55] Dkt. No. 1, at 7.
[56] Dkt. No. 1, at 7.
[57] Dkt. No. 1-1, at 28.
[58] Dkt. No. 1-1, at 28.

such attack is reviewable by CRST's appellate court. Respondents should address these questions too.

### E. Motion for Discovery

After filing her petition, Loefer moved for "emergency" discovery and for a subpoena *duces tecum* directed to the CRST "Enrollment Department."[59] She maintains that there is a need for immediate intervention because the CRST respondents have "failed to file a timely [a]nswer or responsive pleading[.]"[60]

As already discussed, the rules governing habeas petitions require the Court to first screen the case for defective claims before ordering that the proper respondents file an answer.[61] Respondents thus have not failed to respond timely. Discovery in habeas petitions requires leave of court and a showing of "good cause."[62] Without a record sufficient to decide the subject matter jurisdiction and exhaustion questions, the Court does not find good cause to allow discovery at this time.

## CONCLUSION

In light of the requirements for a habeas petition under § 1303, those CRST officials with the power to release Loefer from any actual or potential banishment she faces should provide an answer, motion, or other response to her petition. It appears to the Court that

---

[59] Dkt. No. 8, at 1.
[60] Dkt. No. 8, at 2.
[61] *See* Rules Governing § 2254 Cases, Rule 4.
[62] *See* Rules Governing § 2254 Cases, Rule 6; Rules Governing § 2255 Cases, Rule 6 (both allowing court to "authorize a party to conduct discovery" only "for good cause").

Craven, Claymore, and LeBeau are the appropriate parties. If they believe they are not properly named, then they should provide the Court with sufficient information to order a response from the appropriate official(s). In their response, they should address the Court's questions about the nature of Loefer's alleged "detention," particularly whether she has been permanently banished or merely temporarily excluded from reservation lands. The response should address the issue of tribal exhaustion.

Finally, Loefer's motion for discovery and the issuance of a subpoena on the CRST enrollment office is unripe. Discovery is not called for at this time.

## ORDER

For the reasons stated, and based on the authorities cited and the record now before the Court, it is

ORDERED that within 30 days of this order, respondents Craven, Claymore, and LeBeau—or whoever within the CRST oversees Loefer's banishment—respond to Loefer's petition, focusing on the issues of detention under the ICRA and exhaustion of tribal remedies. They may also raise any other issues in their response consistent with court rules governing habeas corpus cases. It is further

ORDERED that Loefer's motion for discovery and issuance of subpoena *duces tecum*[63] is denied.

[63] Dkt. No. 8.

## NOTICE

A party may seek reconsideration of this order before a district judge upon a showing that the order is "clearly erroneous or contrary to law."[64] The parties have 14 days after service of the order to file written objections unless an extension of time for good cause is obtained.[65] Failure to file timely objections will result in the waiver of a party's right to appeal questions of fact.[66] Objections must be specific to trigger review.[67]

DATED this 27 day of October 2026.

**BY THE COURT:**

Mark A. Moreno

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

[64] 28 U.S.C. § 636(b)(1)(A).
[65] *See* Fed. R. Civ. P. 72(a)
[66] *Id.*
[67] *See Thompson v. Nix*, 897 F.2d 356, 357-58 (8th Cir. 1990) (per curiam); *Nash v. Black*, 781 F.2d 665, 667 &n.3 (8th Cir. 1986).